IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| VOLKSWAGEN GROUP OF AMERICA, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:25-cv-745 (RDA/IDD) |
| ) | |
| AUDIACCESSORIES.COM, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Report and Recommendation ("Recommendation")

issued by U.S. Magistrate Judge Ivan D. Davis on March 17, 2026, and on the Objection thereto

filed by Plaintiff Volkswagen Group of America, Inc. ("Plaintiff"). Dkts. 30, 32. For the reasons

that follow, the Court approves and adopts the Recommendation and overrules the Objection.

## I.  BACKGROUND

On April 30, 2025, Plaintiff filed its complaint for *in rem* relief against forty-two (42)

domain names and DOES 1-25. Dkt. 1. Specifically, Plaintiff asserts one count of Trademark

Cyberpiracy against Defendants, pursuant to the Federal Anti-Cybersquatting Consumer

Protection Act ("ACPA"), 15 U.S.C. § 1125(d). Dkt. 1 ¶¶ 24-29.

On July 25, 2025, Rule 55(a) default was entered against Defendants, Dkt. 19, and, on

August 8, 2025, Plaintiff filed a motion for default judgment, Dkt. 21. On October 10, 2025,

Magistrate Judge Davis held a hearing on the motion. Dkt. 29. On March 17, 2026, Magistrate

Judge Davis issued the Recommendation. Dkt. 30. On March 31, 2026, Plaintiff filed its

Objection. Dkt. 32.

1

## II.  STANDARD OF REVIEW

When evaluating a Recommendation, a district court employs different standards depending on whether a party has objected.  If a party has not objected to the Recommendation, the court "need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).  On the other hand, a district court must "make a de novo determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b) ("The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made.").

Rule 55(b)(2) of the Federal Rules of Civil Procedure governs default judgments sought from the Court.  In evaluating a motion for default judgment, the Court determines "whether the well-pleaded allegations in [the] [C]omplaint support the relief sought." *Ryan*, 253 F.3d at 780. This means that the Court must accept the factual allegations as true and independently determine whether those allegations state a claim under the applicable law.  *Id.*  This is akin to review pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which asks whether the Complaint "contains plausible claims upon which relief may be granted." *Microsoft Corp. v. John Does 1-8*, 2015 WL 4937441, at *8 (E.D. Va. Aug. 17, 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III.  ANALYSIS

Here, Plaintiff objects only to the portion of Magistrate Judge Davis's Recommendation

finding that Plaintiff has not established that it has standing to pursue its ACPA claim. Dkt. 32.

Accordingly, as a preliminary matter, having reviewed the record, this Court does not find any

clear error as to the portions of Magistrate Judge Davis's Recommendation to which Plaintiff did

not object. The Court thus turns to a de novo review of the standing determination.

The Fourth Circuit has held that, "[b]oth the ACPA and the Lanham Act obligate a plaintiff to

show *ownership* of a valid protectable trademark, among other requirements." *Off. of Strategic

Servs., Inc. v. Sadeghian*, 528 F. App'x 336, 345 (4th Cir. 2013) (emphasis added) (citing 15

U.S.C. § 1225(d)(1)(A) ("A person shall be liable in a civil action by the *owner* of a mark . . . ."

(emphasis added)); *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922,

930 (4th Cir. 1995) ("In order to prevail under §§ 32(1) and 43(a) of the Lanham Act for trademark

infringement and unfair competition, respectively, a complainant must demonstrate that *it has* a

valid, protectible trademark and that the defendant's use of a colorable imitation of the trademark

is likely to cause confusion among consumers." (emphasis added))). If a plaintiff "does not own

the intellectual property at issue, it lacks standing to state claims under the Lanham Act or the

ACPA." *Id.*; *see also, e.g.*, *Heron Dev. Corp. v. Vacation Tours, Inc.*, 2017 WL 5957743, at *4

(S.D. Fla. Nov. 30, 2017) ("Here, the relevant statutory language leaves no room for interpretation.

. . . [T]he statute's plain language confers standing on only the owner of a trademark. Congress

just as easily could have conferred standing on 'the owner *or licensee* of a mark,' but it did not do

so. As such, this Court holds that Heron does not have standing to raise the cybersquatting claims

in Count I of its Complaint.").

Here, Plaintiff does not allege that it is the owner of the relevant trademarks; indeed,

Plaintiff concedes that the owners of the trademarks are Audi AG, Bentley Motors Limited,

Automobili Lamborghini S.p.A., and Volkswagen AG. Dkt. 1 ¶ 4 ("[Plaintiff] is tasked with the

3

responsibility of protecting *the trademarks of Audi AG, Bentley Motors Limited, Lamborghini S.p.A., and Volkswagen AG* in the United States." (emphasis added)); Dkt. 32 at 6 ("The trademark *owners* Audi AG, Bentley Motors Limited, Automobili Lamborghini S.p.A., and Volkswagen AG . . . ." (emphasis added)). Accordingly, Magistrate Judge Davis correctly concluded that Plaintiff lacks standing to state its ACPA claim.

In its Objection, Plaintiff asserts for the first time that it is the "exclusive licensee" of the vehicles sold under the relevant trademarks in the United States, and that an "exclusive licensee" also has standing to sue under the ACPA. Dkt. 32 at 4-6. Not so. As a preliminary matter, the text of the ACPA and Fourth Circuit caselaw are clear that only an "owner" has standing to sue under the ACPA. *See* 15 U.S.C. § 1125(d)(1)(A) ("A person shall be liable in a civil action by the *owner* of a mark . . . ." (emphasis added)); *Sadeghian*, 528 F. App'x at 345 (holding that, if a plaintiff "does not own the intellectual property at issue, it lacks standing to state claims under the Lanham Act or the ACPA"); *see also* Dkt. 22 (Plaintiff acknowledging in its motion for default judgment that "[t]he ACPA provides that a person is liable *to a trademark owner*" under certain circumstances (emphasis added)). Plaintiff does not address this in its Objection. Nor does Plaintiff cite *any* cases in which a court has held that an exclusive licensee had standing to sue under the ACPA.

Instead, Plaintiff cites one prior ACPA case that it brought in this District. Dkt. 32 at 4. But, based on the record in that case, the Magistrate Judge recommended (and, on clear error review, the District Judge adopted) the factual finding that Plaintiff "own[ed]" the trademarks at issue and did not address or discuss the "exclusive licensee" theory that Plaintiff asserts here. *Volkswagen Group of America, Inc. v. ACCEESAUDI.COM*, No. 1:23-cv-00849-TSE-WEF, Dkt. 38 at 13 (E.D. Va. Nov. 29, 2023); *id.*, Dkt. 40 at 1 (Dec. 14, 2023). Thus, where, as here, Plaintiff

has conceded that it does not own the marks at issue, and where this Court finds that the record in this case otherwise does not establish that Plaintiff actually owns the marks asserted here, the case is inapposite. *See* Dkt. 1 ¶ 4 ("[Plaintiff] is tasked with the responsibility of protecting *the trademarks of Audi AG, Bentley Motors Limited, Lamborghini S.p.A., and Volkswagen AG* in the United States." (emphasis added)).

The remaining out-of-Circuit cases cited by Plaintiff all address a different provision of the Lanham Act, codified at 15 U.S.C. § 1114(1), which states in relevant part that an infringer of a trademark "shall be liable in a civil action by the *registrant*" (emphasis added). Pursuant to statute, the term "registrant" includes the trademark's registrant and its "legal representatives, predecessors, successors and assigns." 15 U.S.C. § 1127. It is true that some courts have held that, where the terms of the license agreement amount to *de facto* assignment of the mark, such a truly exclusive licensee has standing to pursue a claim under § 1114. *See Experian Mktg. Sols., Inc. v. U.S. Data Corp.*, 2009 WL 2902957, at *3 (D. Neb. Sept. 9, 2009) ("Licensees typically do not have standing to assert a claim under § 1114. However, a truly exclusive licensee may assert a claim under § 1114 where the terms of the license agreement amount to de facto assignment of the mark." (internal citation omitted)); *Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 159 (1st Cir. 1977) ("Although one court, at least, has stated that 'only the registrant' can pursue such remedies, other courts have followed the approach used in patent infringement cases and permitted trademark infringement suits to be maintained by exclusive distributors and sellers of trademarked goods, i.e., 'exclusive licensees' who had a right by agreement with the owner of the trademark to exclude even him from selling in their territory.").

However, even assuming *arguendo* that the same reasoning should be applied to the ACPA provision at issue in this case (contrary to the clear text and Fourth Circuit precedent), Plaintiff has

still failed to support its contention that it has such an exclusive license in the trademarks at issue that it *de facto* owns the trademarks.  In its Objection, Plaintiff merely asserts that that, "[t]he trademark owners . . . do not themselves import and sell *their vehicles* in the United States, and *generally speaking*, do not do business in the United States," and that "each of those entities has made [Plaintiff] the exclusive licensee, importer, and seller *of vehicles*, and they have '*tasked*' Plaintiff with enforcing their trademarks in the United States." Dkt. 32 at 6 (emphases added).  As a preliminary matter, these assertions equivocate and many of these assertions are not supported by the verified Complaint or any other evidence in the record.  *Contrast id., with* Dkt. 1 ¶ 4 ("[Plaintiff] is the exclusive U.S. importer of cars manufactured by Audi AG, Automobili, Bentley Motors Limited, Lamborghini S.p.A. ("Lamborghini S.p.A."), and Volkswagen AG ("Volkswagen AG").  [Plaintiff] is tasked with the responsibility of protecting the trademarks of Audi AG, Bentley Motors Limited, Lamborghini S.p.A., and Volkswagen AG in the United States.").  In short, it is far from clear that "being tasked" with something is the same as *de facto* ownership, and Plaintiff has failed to allege sufficient facts to establish *de facto* ownership.  Indeed, even if the Court were to consider all of the assertions made by Plaintiff in its Objection, these vague and equivocal assertions would still be insufficient under Plaintiff's proposed test.  Moreover, Plaintiff's assertions indicate that the actual owners here *do* conduct some unspecified business in the United States, which the Court cannot say does not involve use of their trademarks. Dkt. 32 at 6 ("The trademark owners[,] . . . *generally speaking*, do not do business in the United States").  And Plaintiff confusingly asserts that it is the "exclusive licensee . . . of vehicles" not of the trademarks.  Thus, even under Plaintiff's proposed test, it would still lack standing to sue under the ACPA.

Accordingly, for the foregoing reasons, Plaintiff's Objection will be overruled, and the

Recommendation will be adopted. Moreover, because "a plaintiff must possess both Article III and statutory standing, or the federal court to which the plaintiff has come has no power to decide his case," the Court will order supplemental briefing on whether Plaintiff has adequately alleged statutory standing in its Complaint such that the Court has jurisdiction over the action. *Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 333–34 (4th Cir. 2007).

## IV.  CONCLUSION

Having reviewed Plaintiff's Objection, the record, and Magistrate Judge Davis's Recommendation, the Court hereby APPROVES and ADOPTS the Recommendation (Dkt. 30); and it is

FURTHER ORDERED that Plaintiff's Objection to the Recommendation (Dkt. 32) is OVERRULED; and it is

FURTHER ORDERED that Plaintiff's Motion for Default Judgment (Dkt. 21) is DENIED without prejudice; and it is

FURTHER ORDERED that Plaintiff's Notice of Request for Hearing (Dkt. 34) is DENIED as moot; and it is

FURTHER ORDERED that, on or before May 27, 2026, Plaintiff shall file a brief of no more than TEN (10) PAGES addressing whether Plaintiff has sufficiently alleged standing to sue under the specific provision of the ACPA at issue in this case.

It is SO ORDERED.

Alexandria, Virginia
April 29 , 2026

/s/
Rossie D. Alston, Jr.
United States District Judge

7